IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUNAWAY BAY CONDOMINIUM ASSOCIATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 16 C 9551<br>) |
| PHILADELPHIA INDEMNITY INSURANCE COMPANIES, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Runaway Bay Condominium Association ("Runaway Bay") brings this action to compel defendant Philadelphia Indemnity Insurance Company ("Philadelphia") to submit the parties' insurance coverage dispute to an appraisal. Before me is Runaway Bay's motion to compel Philadelphia to participate in the appraisal. Subject to the qualification noted below, the motion is granted.[1]

---

[1] Runaway Bay's pleading, which it styles as a "Petition to Compel Appraisal," does not expressly assert any cause of action. However, it seeks declaratory relief in the form of, *inter alia*, an order compelling appraisal, *see* Am. Pet. at 4, and its request for relief is based on a specific provision of the insurance policy issued to it by Philadelphia. For this reason, I construe Runaway Bay's pleading as seeking a declaratory judgment and as asserting a claim for breach of contract, which are the claims typically brought by parties seeking to compel an appraisal. *See, e.g.*, *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, No. 16

I.

On August 2, 2015 and February 19, 2016, storms caused damage to buildings in an apartment complex owned by Runaway Bay in Palatine, Illinois. Runaway Bay was insured under a policy ("the Policy") issued by Philadelphia and submitted a claim in connection with the damage. Runaway Bay values its loss at $2,597,144.28; Philadelphia's estimate is $33,353.87.

Runaway Bay contends that the parties' dispute should be resolved through an appraisal process. Runaway Bay relies on the following provision of the Policy:

> If we and you disagree on the value of the property or the amount of **"loss"**, either may make written demand for an appraisal of the **"loss"**. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **"loss"**. If they fail to agree, they will submit their differences to the umpire.

Property Coverage Form, Ex. 1 to Def.'s Answer (Doc. No. 12-3) at 30.

Philadelphia has refused to appoint an appraiser or to otherwise participate in the appraisal process.[2] According to

---

C 3860, 2017 WL 372308 (N.D. Ill. Jan. 26, 2017); *70th Court Condo Ass'n v. Ohio Sec. Ins. Co.*, No. 16 CV 07723, 2016 WL 6582583 (N.D. Ill. Nov. 7, 2016); *Maggard v. CCC Info. Servs. Inc.*, No. 14 C 2368, 2015 WL 1112088 (N.D. Ill. Mar. 10, 2015).

[2] In its pleading, Runaway Bay contends that, pursuant to "Illinois Standard Policy language," Philadelphia was required

Philadelphia, the motion for appraisal should be denied because Runaway Bay's claim raises issues of coverage under the Policy. According to Philadelphia, such questions can be resolved only by the court. It maintains that the appraisal process is strictly limited to determining the value of an insured's loss.

Philadelphia identifies five such "coverage issues" that it believes require denial of Runaway Bay's motion to compel appraisal: (1) the extent to which the damage to Runaway Bay's property was actually caused by the storms on the dates in question; (2) whether the Policy requires that certain undamaged portions of the property be replaced so that they are visually indistinguishable from portions of the property to which repairs are made; (3) whether the property sustained physical loss or damage; (4) whether Runaway Bay is entitled to recover for overhead and profit costs associated with hiring a contractor; and (5) whether Runaway Bay provided Philadelphia with prompt notice of its loss as required under the Policy. As discussed below, while Philadelphia is correct that some of these issues

---

to appoint an appraiser within twenty days of Runaway Bay's demand for appraisal. Pl.'s Am. Pet. (Doc. No. 5) ¶ 19. According to Runaway Bay, Philadelphia failed to appoint an appraiser within the allotted time and should be forbidden from doing so at this juncture. *Id*. ¶ 20. Runaway Bay does not press this argument in its motion to compel, and I thus do not consider it here.

3

indeed relate to coverage, most do not; and in any event, none of the issues requires denial of Runaway Bay's motion to compel.

**1.  Causation**

Philadelphia notes that the parties dispute whether and to what extent the damage to Runaway Bay's buildings was caused by the storms on the dates in question. For example, Philadelphia maintains that certain portions of the property showed signs of preexisting mechanical damage and thus were not damaged, or were damaged only minimally, by the storms. According to Philadelphia, questions about what caused the damage are not appropriately addressed by appraisers.

This argument assumes that the task of determining the value of the damage can be meaningfully separated from the task of determining what caused the damage. Philadelphia fails to explain how this bifurcation might be achieved as a practical matter. Philadelphia also fails to explain why, even assuming the two inquiries could be separated in practice, the issue of causation is not appropriately addressed by an appraiser. Philadelphia cites no provision of the Policy suggesting that appraisers are forbidden from addressing questions of causation; nor does Philadelphia provide any reason for thinking that determinations regarding causation are beyond the appraiser's ken.

4

In fact, the argument Philadelphia presents here has frequently been advanced by parties opposing motions to compel appraisal, and courts have routinely rejected it. *See, e.g.*, *Philadelphia Indemnity Insurance Company v. Northstar Condominium Association*, No. 15 C 10798 (N.D. Ill. Oct. 18, 2016) ("[I]t seems inherent to an appraiser's duty when assessing damage to assess what caused the damage."); *201 N. Wells, Inc. v. Fidelity and Guaranty Ins. Co.*, No. 00 C 3855 (N.D. Ill. Jan. 24, 2001) ("The court finds that determining the cause of the damages is inherent to the appraiser's duties."); *see also Travelers Indem. Co. of Am. v. BonBeck Parker, LLC*, No. 1:14-CV-02059-RM-MJW, 2016 WL 7733000, at *4 (D. Colo. Oct. 24, 2016) ("[T]he Court holds that appraisers may determine the issue of causation."); *Zarour v. Pac. Indem. Co.*, No. 15-CV-2663 JSR, 2015 WL 4385758, at *3 (S.D.N.Y. July 6, 2015) ("The Second Circuit, however, has found that the question of '[a]pportioning damage causation' is 'essentially a factual question ... to be resolved by making factual judgments about events in the world, not legal analyses of the meaning of the insurance contract.' Therefore, the issue of damage causation is properly subject to appraisal.") (citation omitted) (quoting *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 206 (2d Cir.2012)); *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F. Supp. 2d 259, 264 (D. Del. 2000) ("[T]he Court concludes that in the insurance

context, an appraiser's assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, as well as the amount it would cost to repair that which was lost.").

Philadelphia cites only one case in which a court has held that the issue of causation was not appropriately decided by appraisal, *Spearman Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905 (N.D. Ill. 2000).[3] However, *Spearman*'s discussion of the issue is very brief and does not disclose the basis for its conclusion. In any event, for the reasons already explained, I conclude that questions concerning

---

[3] Philadelphia cites several other cases in support of its position, but none of these is apposite. The question presented in *Lytle v. Country Mutual Insurance Co.*, 41 N.E.3d 657 (Ill. App. Ct. 2015), was whether the policy at issue covered the cost of upgrading to comply with building code ordinances, not the question of what caused the damage to the plaintiff's property. In *FTI International, Inc. v. Cincinnati Insurance Co.*, 790 N.E.2d 908 (Ill. App. Ct. 2003), the dispute was not over causation but over which measure of value (the cost of repair or the sale price) was to be used in determining the amount of the plaintiff's recovery. In *Hanke v. American International South Insurance Co.*, 782 N.E.2d 329 (Ill. App. Ct. 2002), the court held that the defendant could not compel the plaintiff to submit to appraisal because the suit alleged that the defendant was using the appraisal clause as part of a fraudulent scheme. Finally, *Lundy v. Farmers Group*, 750 N.E.2d 314 (Ill. App. Ct. 2001), involved a dispute over whether the use of imitation parts for car repairs were of "like kind and quality" as required under the policy.

the cause of the damage to Runaway Bay's property are appropriate for appraisal.

**2. Matching**

Next, Philadelphia notes that the parties dispute whether the Policy requires replacement of certain undamaged portions of the property in order to visually match portions of the property to which repairs are made. Specifically, Runaway Bay contends that undamaged siding on the buildings must be replaced along with the damaged siding so that the material will appear consistent throughout. In support of its position, Runaway Bay invokes the following provision of the Policy:

> (1) We will not pay more for **"loss"** on a replacement costs basis than the least of:
>   (a) The Limit of Insurance applicable to the lost or damaged property;
>   (b) The cost to replace the lost or damaged property with other property:
>     (i) Of comparable material and quality; and
>     (ii) Used for the same purpose; or
>   (c) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

Property Coverage Form (Doc. No. 12-3) at 33. According to Runaway Bay, only matching siding constitutes property of "comparable material and quality" under subsection (1)(b)(i).

The merits of Runaway Bay's argument are not before me at this stage. It is clear, however, that deciding the merits of the argument will require an interpretation of the expression "comparable material and quality" in the Policy. This is a

7

paradigmatically legal question. *See, e.g.*, *Lundy v. Farmers Group*, 750 N.E.2d 314, 319 (Ill. App. Ct. 2001) ("This question requires an interpretation of the policy language, in particular, the phrase 'like kind and quality.' These issues cannot be resolved through the appraisal process. Consequently, we agree with the trial court that the issues plaintiff raised in her second amended complaint were not subject to the appraisal clause."); *cf. Nat'l Presbyterian Church, Inc. v. GuideOne Mut. Ins. Co.*, 82 F. Supp. 3d 55, 60 (D.D.C. 2015) (holding that policy's "like kind and quality" provision required insurer to cover matching to undamaged property, since provision was ambiguous and was properly construed against the drafter).

Thus, the question of whether the Policy requires replacement of undamaged property to achieve matching is not appropriate for appraisal. This does not mean that Runaway Bay's motion to compel appraisal must be denied. It means only that the "matching" issue will not be part of the appraisal process.

**3. Physical Damage**

Philadelphia argues that the parties disagree over whether various portions of the property suffered physical loss or damage under the Policy. Philadelphia's expert opines that many parts of the property sustained no physical damage; Runaway Bay's expert states that virtually all of the buildings were

physically damaged. *See* Reply Br. at 7. Philadelphia appears to argue that since the Policy covers only physical loss or damage, the parties' disagreement on this point constitutes a "coverage issue."

I disagree. Philadelphia does not contend that Runaway Bay is seeking coverage for parts of the property that Runaway Bay itself acknowledges were not physically damaged. Nor does Philadelphia contend that the parties dispute the meaning of terms such as "physical damage" or "physical loss." Instead, their dispute is over the extent of the physical damage to the property. As with the issue of causation, Philadelphia fails to explain how making this determination can be separated from the task of valuation, or why appraisers lack the competence to make such determinations.

Accordingly, I conclude that the issue of physical damage is suitable for appraisal.

**4. Overhead and Profit**

Philadelphia next objects that Runaway Bay's estimate of its damages includes overhead expenses and profit costs associated with hiring a general contractor. Philadelphia contends that the question of whether overhead expenses and profit ought to be included as part of the loss calculation presents a coverage issue.

9

The argument Philadelphia provides fails to support this contention. It asserts that "[t]his issue likely will depend on what property was damaged, what needs to be repaired, and if a [sic] multiple trades will be required for the repairs, as opposed to just a roofer, for example." Def.'s Resp. Br. at 11. But these issues have to do with whether the damage is extensive enough to require employing a contractor, not with whether the Policy covers overhead costs and profit in the event that employment of a contractor is necessary. Again, Philadelphia offers no basis for thinking that appraisers lack the competence to address the question of whether a contractor is necessary, nor for thinking that the Policy forbids them from doing so. Notably, another court in this district recently rejected the same argument Philadelphia presents here. *See, e.g.*, *Windridge*, 2017 WL 372308, at *3 ("In calculating repair or replacement cost, it is necessary to assess what must be replaced or repaired, who is qualified to perform that work, and how much that work costs. That inquiry requires determining whether a general contractor is needed, in which case profit and overhead is part of the loss, or whether a single tradesman can do the work. That determination is a question proper for appraisal.").

In short, the issues of overhead and profit are appropriately addressed via appraisal.

5. **Late Notice**

Finally, Philadelphia briefly asserts that Runaway Bay failed to comply with the Policy's requirement that the insured provide Philadelphia with prompt notice of losses covered under the policy. *See* Def.'s Answer, Ex. 1 (Doc. No. 12-3) at 31 (requiring insured in the event of loss to "[g]ive [Philadelphia] prompt notice of the 'loss'"). Under the Policy, failure to provide prompt notice results in a loss of coverage. According to Philadelphia, the question of whether Runaway Bay provided prompt notice is a legal question for the court, not one for appraisers.

Philadelphia is correct that this issue is a legal one. It has failed to show, however, that the adequacy of the notice is a genuine issue in this case. Runaway Bay notified Philadelphia of the damage caused by the August 2, 2015 storm on October 23, 2015 -- roughly twelve weeks later.[4] Philadelphia offers no citation to authority -- and indeed no argument at all -- to suggest that Runaway Bay's notice was deficient. I note that under Illinois law, in seeking to show an insured's failure to comply with a prompt notice provision, an insurer must show that it was prejudiced by the insured's delay. *See Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1074–75 (7th Cir. 2004). Yet

---

[4] Philadelphia appears to concede that Runaway Bay provided prompt notice of the damage resulting from the storm on February 19, 2016.

11

Philadelphia has not asserted, much less attempted to demonstrate, that it was prejudiced by the notice Runaway Bay provided. It is also worth noting that the *Windridge* court concluded as a matter of law that a period of four months was sufficient to comply with the same "prompt notice" provision at issue here. *See, e.g.*, *Windridge*, 2017 WL 372308, at *3. As *Windridge* also noted, Illinois courts have found adequate notice to have been provided after periods of eleven months and indeed even thirty-one months. *Id.* (citing *Berglind v. Paintball Bus. Ass'n*, 930 N.E.2d 1036, 1046 (Ill. App. 2010), and *First Chi. Ins. Co. v. Molda*, 36 N.E.3d 400, 419-20 (Ill. App. 2015), respectively). Philadelphia makes no attempt to address these precedents.

In short, Philadelphia's conclusory invocation of the Policy's notice provision does not defeat Runaway Bay's motion to compel.

## Conclusion

For the reasons discussed above, Runaway Bay's motion to compel appraisal is granted. The parties' dispute will be submitted to appraisal in accordance with the terms of the Policy, except as to the question of whether the Policy requires replacement of undamaged siding.[5]

---

[5] Philadelphia and Runaway Bay also dispute whether the appraisal will have preclusive effect preventing Philadelphia from further

12

ENTER:

*Elaine E. Bucklo*

Judge Elaine E. Bucklo
United States District Court
Northern District of Illinois

Dated: April 25, 2017

---

litigation regarding the scope of Runaway Bay's loss. However, the parties' arguments on this point are cursory, and neither has pointed to any provision of the Policy in support of its position. In any case, the preclusive effect *vel non* of the appraisal does not determine whether Runaway Bay has a right to compel the appraisal in the first place.